Our third case this morning is Groves v. United States. May it please the Court, Counsel, my name is Jenny Johnson Ware, I'm representing the appellant Philip Groves. The question presented in this appeal is whether the IRS has unchecked authority to assess penalties under Section 6700 at any time, or if that penalty enforcement power is restrained by the five-year catch-all statute of limitations in 28 U.S.C. Section 2462. In October 2015, the IRS assessed a penalty against Philip Groves for close to $2.4 million based on allegations related to a transaction that was completed in 2005, ten years earlier. There is no allegation that any tax went unreported or unpaid, yet Groves had to pay over $350,000 to get the right to dispute that penalty in court. And now that he is in court disputing that penalty, the IRS assessed another $1.2 million penalty on the same old 2005 transaction just a few weeks ago. The government claims that its power to assess these penalties is unlimited, and it wouldn't matter if the transaction occurred in 2005 or 1985. When the government made a similar claim regarding the enforcement power of the SEC, a unanimous Supreme Court relied on Section 2462 to check that power. Not once, but twice in the last five years. Unless Congress has otherwise provided, and it has not here, Section 2462 bars an action suit or proceeding for the enforcement of any civil penalty commenced more than five years after the claim occurred. The question presented to this Court has far-ranging consequences well beyond issues that relate to tax shelters. Section 2462 applies to any civil penalty enforced by any agency. The subchapter that contains assessable penalties in the Internal Revenue Code, which is subchapter 68b itself, contains dozens of penalties, for which 2462 is the only statute of limitations. Those penalties target employers, employees, tax-exempt organizations, vendors, brokers, many, many other people and entities. As the amici law professors point out, the government's position that its power to enforce assessable penalties is unbounded by any limitations period presents a very real threat to typical and low-income taxpayers, not those just who are accused of promoting tax shelters, but to any taxpayer who may face enforced collection of onerous penalties many, many years after the alleged misconduct. Has any court ever imposed five-year catch-all statute of limitations on Section 6700 assessments? The district courts in Mulliken and... Any circuit court ever applied it? The district court has, because the circuit courts that have considered the issue considered it in the early 90s before the Supreme Court's opinions in Gabelli and Kokosch. And those decisions relied on a presumption that the government gets preferred status via these statute of limitations, and they kind of worked their way backwards into figuring that 2462 didn't apply because Congress didn't explicitly say that it should apply. In Gabelli and Kokosch, the Supreme Court showed us that that isn't the right way to approach that issue. The government argued for that preferred status in its briefings to the Supreme Court, and the Supreme Court didn't do so. The court applied 2462 broadly to limit and restrain government enforcement of penalties without any mention of the presumption that might favor the government. In fact, it did what the court in 3M, the D.C. Court of Appeals, recognized as appropriate in this case, which is to apply the opposite presumption that comes from Chief Justice John Marshall back in Adams v. Woods in 1804, talking about how allowing the government to enforce penalties at any distance of time would be utterly repugnant to the genus of our laws, is what he said. And that's exactly what this situation presents. It's allowing the IRS to assess penalties on a vast swath of citizens of this country at any distance of time from the conduct that allegedly triggered those penalties. Counsel, I have some concern about jurisdiction under 1292 and the recertification of the order resetting the clock. Because the Supreme Court in Bowles made pretty clear that equitable exceptions can't be made to jurisdictional limits, and everybody agrees that in 1292 this is a jurisdictional, not a claims processing rule, and it seems to me that this process of recertifying the order to restart the clock is just kind of a way around the district court's inability to extend the time for an equitable reason. Could you address that? Yes, I'd be happy to. And this court in nuclear engineering, which predated the court's emphasis on the firmness of jurisdictional deadlines, go ahead, yes. And in that process did emphasize that the appeal should not be dismissed for want of appellate jurisdiction if the appeal from the recertified order would further the purpose of section 1292B. And I submit that the reason for the recertification obviously didn't change in those two weeks between the initial certification and the recertification two weeks later, and that all of the reasons why an interlocutory appeal is appropriate in this case remained true, and that counsel took every possible step to correct the error once it occurred. As I believe you probably all know from reading the briefs, the error occurred from an errant email sent to a mistyped email address to the clerk. The government and all counsel of record received copies, knew that everyone was attempting to file it. That went on on a Friday night. On Sunday, it was sent correctly sent to the clerk. Then there was an order for recertification and another petition filed. I have no doubt. I mean, yeah. In reading it, I have no doubt that if the district court could make an equitable exception, this seems like a situation in which an equitable exception would be appropriate. It's just that looking at the language of 1292 and a federal rule appellate procedure 5, it seems pretty clear it runs from the order, meaning the recertified order, and I just am having a hard time seeing how the district court can just keep setting the clock. It just doesn't seem like it permits an equitable exception. This court in nuclear engineering, I believe, found that it would. It's not necessarily an equitable exception as much as when the district court certifies its order, and it can be a certification that is recertifying the same order, it restarts the 10-day clock. And there's a similar case in the Second Circuit, Marisol A. versus Giuliani, where the council miscalculated the 10-day period. So the district court recertified, and jurisdiction was appropriate. The Supreme Court has also accepted an appeal after recertification in Baldwin County Welcome Center versus Brown in 1984. But it didn't address the question. The majority didn't address the question. Justice Stevens did, in his dissenting opinion, and agreed that the court should be exercising jurisdiction over this. Although implicit jurisdictional holdings don't bind, right? Of course they don't bind. I do believe that under this court's precedent in nuclear engineering, this court has jurisdiction and should be considering this appeal at this juncture. The alternative, of course, would be for Mr. Groves to get to appeal this at the end of his case after a final judgment, which, especially in a statute of limitations case like this, forcing Mr. Groves to defend this case and put forth the resources to do that because of an errant email seems like that would not do justice or serve the purpose of 1292, which I believe is the overarching concern of the court. So as with all assessable penalties, the IRS can make a choice. It can choose to enforce Section 6700 penalties by suit or by assessment. When Congress gave the IRS that power to enforce by assessment, it did not intend to give the IRS the power to relieve itself of the statute of limitations in 2462. Allowing that summary procedure for enforcing certain penalties did not come with creating a large class of penalties for which there is no statute of limitations at all. If the IRS chooses to proceed by assessment as their mode of enforcement, that assessment is the instrument through which the government enforces the penalty and that assessment commences an action, suit, or proceeding within the meaning of Section 2462. I think an analogy to more normal and typical court proceedings might be helpful because an assessment is very much like a complaint that gets filed in court. And the person, the accused in the complaint-seeking penalties, must either defend or they can choose to do nothing. And if they choose to do nothing, then the government has to come forward and ask the district court. Hasn't the Supreme Court said that an assessment is essentially a bookkeeping notation, not something like a complaint that you're trying to analogize it to? An assessment is as much a bookkeeping notation as a complaint is a bookkeeping notation in the district court's records. When an assessment is the kind of notation that is made for a self-reported, volunteered tax that a taxpayer includes in their tax return, that's not initiating an action, suit, or proceeding for purposes of 2462 and it has nothing to do with a penalty. A penalty assessment like this is very much akin to any other charging instrument from an agency. It kicks off the process by which the accused has an opportunity to defend himself. So just like a complaint communicates to an accused once it's served, hey, come to court and defend yourself now if you want any chance to do that, otherwise I'm going to get a default judgment against you and I'm going to have this judgment against you. The assessment does the exact same thing. It communicates to an accused, hey, you have 30 days to pay 15% of this penalty, file a claim for refund, and then go to court, or we're going to have a judgment against you and we're going to enforce that judgment against you. There's nothing lesser about an assessment than a complaint in order to show cause any other method of charging a penalty imposed by a government agency. Another argument that I think is worth talking about is the government's position that Congress otherwise provided a statute of limitations. And there are a lot of places they look to argue that Congress otherwise provided a statute of limitations, but they didn't. Congress uses the at any time language in a number of other places in the code, including in the penalty provisions that served as the model for section 6700. And they didn't take that language and incorporate it into 6700 or 6703. 6502, which is the statute of limitations on collection, begins when there is an assessment made within the period of limitations properly applicable thereto. Section 6502 needs a partner. It doesn't fill the space on its own. It needs a period of limitations on assessment for it to make any sense and fit into the enforcement scheme envisioned by Congress. Typically 6501 is its companion. But not always. There are other provisions in the code and there are other places where a statute of then allows the IRS 10 years after the assessment is properly made to collect. In this situation, section 2462 is the companion to section 6502. It allows the assessment within five years of the conduct. And then if that assessment occurs, then 6502 kicks in to allow 10 years for collection. Section 6502 doesn't just take up the entire field. When does the cause of action for a 6700 penalty accrue? It accrues at assessment. When does it accrue? I'm sorry. It accrues when the conduct underlying the penalty occurs. So the way the penalty is described, there are two different actions that can trigger the penalty. One is the making of a false statement or one is providing a gross valuation misstatement or an overvaluation. So it's whenever the accused person commits that act. And is there a discovery rule vis-a-vis the government, the IRS? There is not and I would submit that the Supreme Court would look disfavorably upon any discovery rule given its rulings in Gabelli. I would also note that there would be no reason for a discovery rule here because the IRS began its audit of this exact conduct in 2005 when it was occurring. So there wouldn't be any possible argument that they didn't know that the penalty violation had occurred if indeed it had. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you very much. May it please the Court. My name is Ivan Dale. I am with the Department of Justice Tax Division and I represent the United States as the appellee here. The appellant can't prevail in this appeal unless he shows that an assessment is an action, suit, or proceeding. Now both the terms assessment and the phrase action, suit, or proceeding are terms of art in their respective code sections. An assessment, as Your Honor noted, is essentially a bookkeeping notation. It is the official recording of the fact of the liability in the books of the Secretary of the Treasury. Now we pointed out in our opening brief that the IRS is required to make an assessment of the tax that is shown on a tax return. So for each of us who have filed a tax return, we have been subject to an assessment by the IRS in each and every year in which we filed a return. Now if we were to fill out, say, a bar application or a loan application that asked us a question, have you ever been party to an action, suit, or proceeding brought by the government, you would not think to answer yes to that question because you had been assessed a tax. Now for counsel's part, I understood her argument on reply and her opening argument before this court to mean we're not going to say that those kinds of assessments are an action, suit, or proceeding. We're just going to say some assessments are an action, suit, or proceeding, and particularly the penalty assessments that were assessed against my client. The problem with that is that the assessment is the same regardless of the type of tax or penalty incurred. Section 6671 says that a penalty is to be assessed and collected in the same manner as a tax. The other problem with that is it doesn't deal with the problem of how this would apply in other provisions in Title 28. As I mentioned, the phrase action, suit, or proceeding is also a term of art used throughout Title 28. We found the exact phrase was used at least 15 times, and we pointed out that in some of those cases, it would make no sense to refer to that as a proceeding or to refer to an assessment as an action, suit, or proceeding. One of those being the district courts have original jurisdiction over any action, suit, or proceeding in which the United States is a party. Well, the district courts clearly don't have original jurisdiction over tax assessments until and unless a complaint is filed in the district court. The United States attorneys are charged with prosecuting action, suits, or proceedings in which the United States is concerned. Now clearly, the US Attorney's Office is not the one who makes tax assessments. The fact of the matter is, is the instructions in Title 28 are really to courts, and the statute itself says that no action, suit, or proceeding shall be entertained unless brought within five years. And so what that means is it's an instruction to the court hearing the case that if that case was not brought before the court within five years of the conduct accruing, then it should be thrown out. Now there have been cases that have sort of expanded this to mean not just judicial proceedings brought in district courts, but administrative proceedings brought before an administrative law judge. We're not quarreling with that line of cases that say a formal administrative proceeding brought before an ALJ would also fall within the ambit of action, suit, or proceeding. And the reason being is in those cases, the court has at least identified that you had a complaint, you had an answer, you had pleadings, motions, depositions, other discovery, hearing, evidence introduced, findings, and a final decision. The fact of the matter is, is that an action, suit, or proceeding is a legal process instituted by one party or another for the purpose of finally adjudicating the subject matter thereof. The assessment of a tax or even of a penalty is always, to be sure it has an effect, but it's always subject to challenge later in court. It just so happens that in tax cases, as opposed to in most cases where the government asserts a penalty, they have to bring an action to impose the penalty. They have to file suit either in district court or file an action before an ALJ, before the penalty is imposed. In tax cases, it's reversed. The penalty or tax or penalty is imposed and then it's subject to challenge in court. That's why taxes are a little different than these other penalty cases on which the appellants rely. That's not an argument for tax exceptionalism. That is just pointing out the fact that in tax cases are, in that sense, different. You know, I think that appellants' concern about the IRS being able to assess things indefinitely is really a matter best left to Congress. There are certainly cases in the Internal Revenue Code in which an assessment may be made at any time. What took so long here? Well, so, I don't know exactly. I think there was some movement between the examiner who was looking at these cases. The transaction itself was somewhat complex. It involved distressed Chinese debt and a series of partnerships that were sort of stacked on top of each other to enable giant losses to be passed from offshore entities to domestic consumers and be able to offset their tax liability that way. I know that typically the procedure in those cases is to proceed against the partners or the individual taxpayers, and then later on to go after the advisors that concocted the scheme. I think they say that we had enough information as of 2008, maybe, to assert the penalty, and we didn't for another seven years. My only response to that is the IRS taking its time to impose these kind of liabilities is actually a good thing. The appellant was requesting a hearing and requesting to dispute this matter before the assessment actually occurred. So, I don't think that there was an egregious lapse of time on that basis. But, in any event, the risk of abuse in these cases is sort of mitigated by the fact that the IRS has the burden of proof in any proceeding in court with respect to a 6700 penalty. So, the risk of loss of relevant documents, the risk of fading memories, the IRS bears that more than the appellant. The IRS doesn't earn interest while this penalty, until and unless this penalty is assessed and notice and demand for payment made. So, there is every incentive to bring the matter to a head early. And the fact of the matter is, is that for most of these clients who were sold the abusive tax shelter, not maybe, I don't know about this particular shelter, but in many shelters, the clients themselves will either not file a return on the basis of the false or fraudulent representation of the tax shelter promoter. They may have a gross valuation, or they may have a substantial emission from gross income on the basis of the representations of the shelter promoter. Their returns themselves may reflect a false or fraudulent statement with intent to evade tax based on their dealings with the shelter promoter. In any of those three cases, it is clear that the tax for the client may be assessed at any time. So, the upshot of the argument being raised here on appeal is that whereas these clients, the people who bought into the shelters, they may be assessed at any time or for periods longer than the five year period contemplated by 2462. Their argument is, even though these clients are still on the hook, the shelter promoter should get off the hook. And we think it makes more sense to align those more exactly. But anyway, that is the practical effect of the ruling sought by appellant here. So, unless the court has any further questions, I am happy to leave the balance of my time and simply ask the court to affirm for the reasons stated by the district court. Thank you. I swear we have a little bit of time left. I'm talking much. I'll go very fast. You can have two minutes. Thank you. I appreciate that. Thank you. First, I'd like to call the court's attention back to the Supreme Court's case in Bull. Because I think its coverage of the issue about this reversed procedure is very important to understand. In tax procedure, the usual pleading and judgment is reversed. And you get to start with an assessment that has the equivalent of a judgment. But in that case, the court did something very important. It said the taxpayer has a defense that he could have raised in a suit. And let us look at this and see if we're going to allow that taxpayer to raise that same defense when the IRS proceeds by assessment rather than proceeding by suit. And the court said, yes, we will. We will let that taxpayer raise a defense he would have had in a suit even when the IRS is proceeding by assessment because an assessment is equivalent for substantive purposes to a suit. And the fact that it's a summary process doesn't take away that fundamental nature of the assessment being the equivalent of a suit. And so I would recommend re-reading Bull because I think it is really, truly fundamental and important on this issue. Second is this notion that an assessment that is made in the IRS books for every taxpayer and that there are millions of them made, that is in no way the same in substance as a penalty assessment. And the code itself distinguishes between many different kinds of assessments. There's that assessment of self-reported tax. It's very different from an assessment of a deficiency. So whenever the IRS wants to assess more than what the taxpayer raises their hand and says they owe, there's a much more complicated procedure that the IRS has to follow that in most situations includes tax court review prior to assessment. For these particular penalties, that deficiency process is taken away, and these are purely assessable, and the IRS can do what they want with this penalty. And I would wrap up by just reiterating that Section 2462 is broad. It applies to any civil penalty and any mode by which the government exercises that penalty enforcement power. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.